AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>The premises of 5401 Hawkins Lane, Ethel,<br>Louisiana, 70730, to include any outbuildings<br>associated with the premises if located thereon. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 17- **MJ-97** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
The premises of 5401 Hawkins Lane, Ethel, Louisiana, 70730, to include any outbuildings associated with the premises if located thereon, further described in ATTACHMENT "A."

located in the _____ Middle _____ District of _____ Louisiana _____ , there is now concealed *(identify the person or describe the property to be seized):*

SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of a Controlled Substance |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jason A. Dohm, Task Force Officer, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 09/11/2017 _____

_____
*Judge's signature*

City and state:  Baton Rouge, Louisiana

Richard L. Bourgeois, Jr., Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

The property to be searched 5401 Hawkins Lane, Ethel, Louisiana, to include any outbuildings, storage sheds, detached garages and vehicles associated with the premises if located thereon within the curtilage.

The property is further described as being a mobile home with an attached porch and a red roof. The area to be searched is the last property on Hawkins Lane, at the dead end. Furthermore, there is a gate with placards across the driveway, which restricts access to the location.  Photographs of the property are included below.





## ATTACHMENT B

### Particular Things to be Seized

Items to be searched for and seized include any fruits, contraband, evidence, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, including the following:

1. Cocaine and other controlled substances;

2. Pots, pans, blenders, presses, or other dishes, items, containers, materials, or equipment used in the conversion of cocaine to cocaine base or to process other controlled substances for redistribution, and which may contain residue from cocaine and other controlled substances.

3. Drug paraphernalia, including scales, plastic baggies, plastic wrappers, and other equipment and materials used to receive, measure, weigh, package, and distribute cocaine and other controlled substances ;

4. Baking soda, Isotol, and other chemicals used to process cocaine and other controlled substances for redistribution;

5. Sums of cash or currency;

6. Ledgers, logs, and notes containing records of past, present, or future drug transactions or containing information about other drug dealers or transactions;

7. Any cellular telephones or devises;

8. Any firearms and/or ammunition; and

9. Documents related to residency and/or ownership of the property being searched.

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

IN THE MATTER OF THE APPLICATION  :
OF THE UNITED STATES OF AMERICA  :   CASE NO. 17-mj- **97**
FOR A WARRANT AUTHORIZING THE  :
SEARCH OF THE PREMISES LOCATED  :
AT 5401 HAWKINS LANE, ETHEL,  :   **UNDER SEAL**
LOUISIANA, 70730  :

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

Your Affiant, Jason A. Dohm, a Task Force Officer ("TFO") with the Drug

Enforcement Administration ("DEA"), being duly sworn, deposes and states as follows:

## INTRODUCTION

1.    I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure and Title 21, United States Code, Section 879, for a warrant to

search the premises known as **5401 Hawkins Lane, Ethel, Louisiana, 70730**, further

described in Attachment A, for the things described in the following paragraphs and in

Attachment B.

## AGENT BACKGROUND

2.    I am a law enforcement officer of the United States within the meaning of Title

18, United States Code, Section 2510(7), that is, an officer of the United States who is

empowered by law to conduct investigations of and to make arrests for offenses enumerated

in Title 18, United States Code, Section 2516.

3.    I am a narcotics detective with the Baton Rouge City Police Department,

employed since April 19, 2004, and have been assigned to the narcotics division since

December 2009.  I was previously assigned to the DEA, Baton Rouge District Office

("BRDO"), from February 26, 2012, to March 2015.  From March 2015, to March 2016, I

was transferred back to the narcotics division where I continued investigating narcotics

trafficking cases in the Baton Rouge area.  I have currently been assigned to the DEA since

March of 2016.  Since being assigned to the DEA as a TFO, I have conducted numerous

investigations of unlawful drug distribution in violation of Title 21, United States Code,

Sections 841(a)(1), 843(b), and 846, and conducted or participated in electronic and physical

surveillance, surveillance of undercover transactions, the introduction of undercover agents,

the execution of search warrants, debriefings of cooperating sources and reviews of taped

conversations and drug records.  Through my training, education and experience, I became

familiar with the manner in which illegal drugs are transported, stored, and distributed and

the methods of payment for such drugs.  I have conducted and participated in investigations

involving interception of wire and electronic communication devices, and I am familiar with

the ways in which drug traffickers conduct their business including, but not limited to, their

methods of importing and distributing drugs, their use of cellular telephones and of digital

display paging devices, and their use of numerical codes and code words to conduct their

transactions.

　　　　4.　　　In addition, I have conducted, in connection with these and other cases, follow

up investigations concerning the concealment of assets, money, bank records, etc., and the

identification of co-conspirators through the use of ledgers, telephone bills and records,

photographs and bank checks, as related to drug trafficking.

5.      Through my training, education, and experience, I have learned that drug traffickers often place assets in names other than their own or incorporate entities to avoid detection by government agencies.  It has also been my experience that although assets are in other persons' names, the narcotics traffickers actually own and continue to use these assets and exercise dominion and control over them.  Furthermore, large-scale narcotics traffickers also maintain, on hand, large amounts of U.S. currency in order to continue their illicit activities.

6.      Through my training, education, and experience, I have also learned that drug traffickers maintain books, records, notes, airline tickets, money orders, and other papers and documents relating to transportation, ordering, sale, and distribution of illegal controlled substances.  It is also common for large-scale narcotics traffickers to hide drug sales and records of drug transactions in secure locations within their residence and/or business for their ready access and control and to conceal them from law enforcement. Narcotics traffickers in large-scale trafficking organizations also conceal, in their residences and/or place of business, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of illegal drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of large sums of money gained from illegal narcotics-trafficking activities.

7.      Through my trainings, education, and experience, I have also learned that, when narcotics traffickers amass large proceeds from the sale of drugs, the narcotics trafficker attempts to legitimize their profits. In an attempt to accomplish this, narcotics

traffickers utilize domestic banks and banking services, such as securities, certificates of deposit, money market accounts, safe deposit boxes, letters of credit, brokerage houses, real estate, shell corporations, and business fronts.

8.      I am currently participating in an Organized Crime Drug Enforcement Task Force ("OCDETF") investigation involving agents and officers of the DEA, Internal Revenue Service ("IRS"), the Baton Rouge City Police Department ("BRPD"), Iberville Parish Sheriff's Office ("IPSO"), East Baton Rouge Parish Sheriff's Office ("EBRSO"), West Baton Rouge Parish Sheriff's Office ("WBRSO"), the Louisiana State Police ("LSP"), and Ascension Parish Sheriff's Office ("APSO").

9.      I make this affidavit based upon my personal knowledge derived from my participation in this investigation and upon information from the following sources, which I believe to be reliable:

  a.  Oral and written reports and documents about this and other investigations which I have received from members of DEA and telecommunications companies;

  b.  Physical surveillance conducted by DEA and other law enforcement agencies;

  c.  Controlled, undercover purchases of cocaine-base and marijuana

  d.  Public records;

  d.  Review of pen register/trap and trace information, telephone toll records and subscriber information for telecommunications and residential utility service;

  e.  Reports of consensually monitored and recorded telephone conversations;

  f.  Interviews of confidential sources; and

g.      Conclusions based on my and other DEA agents who have been qualified as expert witnesses in narcotic trafficking cases, interpretations of conversations and text messages intercepted pursuant to a court authorized interception of wire and electronic communications.

10.     This affidavit is submitted solely for the purpose of establishing probable cause to support the issuance of a search warrant and does not set forth all facts and circumstances known to me or other investigators regarding this matter. This affidavit is also offered in support of a search warrant for **5401 Hawkins Lane, Ethel, Louisiana 70730**.

11.     Because this affidavit is being submitted for the limited purpose of seeking authorization for the issuance of a search warrant, your Affiant has not included each and every fact learned during the course of this investigation.  Facts not set forth herein are not being relied upon in reaching the conclusion that a search warrant should be issued.

12.     Since November 2, 2016, agents of the DEA BRDO have been conducting an investigation of the cocaine trafficking of **JOHNNY MATTHEWS ("MATTHEWS")**, **JEREMY HAWKINS**, a.k.a. "Jr.," and "Pimp" (**"HAWKINS"**), and the **HAWKINS Drug Trafficking Organization** (hereinafter referred to as the **"HAWKINS DTO"**).  This investigation has identified **HAWKINS** as a large-scale source-of-supply ("SOS") of cocaine and marijuana in East Feliciana Parish, and surrounding parishes in Louisiana.

13.     Based on controlled purchases, physical surveillance, CS debriefings, and the analysis of telephone toll and pen register information, agents identified and initiated court authorized Title III intercepts of the following telephones (hereinafter referred to as **"TARGET TELEPHONES"**), used by **HAWKINS** to facilitate his cocaine trafficking:

i.      225-425-6879, a telephone used by **HAWKINS**, and hereinafter referred to as

**TARGET TELEPHONE 1**. Interception of **TARGET TELEPHONE 1**

began on June 5, 2017, and was terminated on June 20, 2017.

ii.      504-875-9495, a telephone used by **HAWKINS**, and hereinafter referred to as

**TARGET TELEPHONE 3**. Interception of **TARGET TELEPHONE 3**

began on June 23, 2017, and was terminated on August 3, 2017.

iii.      225-719-9151, a telephone used by **HAWKINS**, and hereinafter referred to as

**TARGET TELEPHONE 4**. Interception of **TARGET TELEPHONE 4**

began on July 21, 2017, and was terminated on August 20, 2017.

iv.      225-603-1868, a telephone used by **HAWKINS** and hereinafter referred to as

**TARGET TELEPHONE 5**. Interception of **TARGET TELEPHONE 5**

began on August 15, 2017, and was terminated on August 28, 2017.

14.      Included in the Court Order authorizing the interception of wire and electronic

communications occurring over the **TARGET TELEPHONES** is the release of E-911 Phase

II Geo Location data from the service provider. E-911 Phase II Geo Location data is the GPS

location of the **TARGET TELEPHONES**.

15.      Based on intercepted conversations, physical surveillance, discussions with

confidential sources, and other law enforcement officers, your Affiant believes that

**HAWKINS** is obtaining multi-kilogram amounts of cocaine from a Hispanic male in

Houston, Texas. The Hispanic male is tentatively identified as **Cesar MORA** ("**MORA**").

After obtaining the cocaine, your Affiant knows **HAWKINS** converts a portion of the

cocaine to cocaine base, and a portion is kept in powder form. **HAWKINS** distributes the

cocaine and cocaine base in ounce quantities, up to multi-kilogram quantities, to customers in the East Feliciana Parish area and surrounding areas. These cocaine and cocaine base sales result in substantial cash profits for **HAWKINS**.

16. Based on my training and experience and the facts set forth in this affidavit, your Affiant knows that **HAWKINS** and members of the **HAWKINS DTO**, have committed, are committing, and will continue to commit offenses involving distribution of cocaine and cocaine base, and conspiracy to do the same, in violation of Title 21, United States Code, Sections 841(a)(1). As set forth below, there is also probable cause to believe that **HAWKINS** is using **5401 Hawkins Lane, Ethel, Louisiana**, to facilitate his cocaine trafficking.

17. Described below are details of some of the pertinent calls intercepted over the above telephones. In some instances, the entire conversation has been included and in others only the pertinent parts of the conversation are detailed. Your Affiant has included his interpretation, contained within the parentheses, of code words or the meaning of the conversation. Your Affiant based his interpretations of the conversations and code words based on prior intercepts, prior investigation and facts available at the time of the writing of this Affidavit. Your Affiant believes the interpretations are as accurate as possible based on the data available.

## PROBABLE CAUSE

18. In November 2016, agents of the BRDO initiated an investigation into the cocaine trafficking of **MATTHEWS**, **HAWKINS**, and the **HAWKINS DTO**. The investigation identified **HAWKINS** as the leader of an organization that is distributing multi-

kilogram quantities of cocaine in the East Feliciana Parish, and surrounding parishes in Louisiana. During the course of this investigation, your Affiant has learned the identity of certain members of the **HAWKINS DTO** and basic operation of its narcotics distribution through physical surveillance, intercepted communications and discussions with confidential sources and other law enforcement officers. In addition, your Affiant has learned that the base of operation for the **HAWKINS DTO** is located at **5401 Hawkins Lane, Ethel, Louisiana**.

19.     Beginning on January 11, 2017, agents held several debriefings with a confidential source (hereinafter referred to as the "CS-2") regarding **HAWKINS** and the **HAWKINS DTO**.

20.     On May 12, 2017, Task Force Agent ("TFA") Timothy Fabre was informed by DEA agent Lorenzo Alvarado, of the Houston Field Office, that CS-2 has become target of an active DEA investigation being conducted in Houston, Texas. TFA Fabre contacted the supervising Assistant United States Attorney for this investigation and informed him of CS-2's suspected activity.

21.     While it appears that CS-2 has been involved in illegal drug trafficking during his/her cooperation with DEA, your Affiant believes the information relayed by CS-2 to agents described below to the extent possible, has been corroborated by independent investigative means. To your Affiant's knowledge, CS-2 has never provided misleading or incorrect information about the instant investigation. Therefore, your Affiant believes the information provided by CS-2 about **HAWKINS** and the **HAWKINS DTO** is credible and reliable.

22.     During debriefings, CS-2 has provided information that **HAWKINS** is the leader of a large-scale cocaine-trafficking organization based in East Feliciana Parish, Louisiana.  CS-2 disclosed that he/she has had a long-standing marijuana and cocaine trafficking relationship with **HAWKINS**.

23.     According to CS-2, **HAWKINS** obtains kilogram quantities of cocaine for distribution from a subject known to him/her as "**CESAR**".  CS-2 stated that **HAWKINS** is known to use multiple telephone numbers to facilitate his cocaine trafficking.

24.     According to CS-2, **HAWKINS** utilizes one of his residences located at **5401 Hawkins Lane** in Ethel, Louisiana, to receive shipments of cocaine and marijuana, and that he/she has delivered shipments of marijuana to **5401 Hawkins Lane** in the past for **HAWKINS**.

25.     According to CS-2, he/she was introduced to **HAWKINS** in either 2008 or 2009.  At that time, CS-2 began delivering shipments of marijuana to **HAWKINS** once or twice a month depending on if **HAWKINS** had traveled to Texas to pick up a shipment of marijuana or not.

**A.     Surveillance of HAWKINS on July 24, 2017.**

26.     On July 24, 2017, agents intercepted a series of text messages between **HAWKINS** and **Kenneth BELL** ("**BELL**") over **TARGET TELEPHONE 4**.  Agents believe **BELL**, who is **HAWKINS'** father, is the person who facilitates the purchase of cocaine between **HAWKINS** and **MORA**.  Based on the conversation, in conjunction with

9

the E-911 data, which indicated **HAWKINS** was traveling west bound of Interstate 10,

agents learned that **HAWKINS** was en route to Houston, Texas, to meet with **BELL**

pertaining to a narcotics transaction.

27.     DEA Agents in Houston, Texas, were able to locate **HAWKINS'** 2015 GMC

Sierra Denali, bearing Louisiana license C269151, travelling west bound on Interstate 10. At

that time, agents initiated surveillance on **HAWKINS**.

28.     During the surveillance, agents observed **HAWKINS** travel to one of the

residences utilized by **MORA**, who is a documented cocaine and marijuana trafficker in the

Houston, TX and is the target of an active DEA investigation being conducted by agents of

the Houston Division. After a short period of time, agents observed **HAWKINS** leave this

location and proceed to a parking lot, where agents observed **HAWKINS** meet with multiple

subjects, one of whom is believed to be **BELL**.

29.     In the early morning hours of July 25, 2017, E-911 data indicated **HAWKINS**

was traveling east bound on Interstate 10.  At that time, BRDO agents established

surveillance on Interstate 10 and located **HAWKINS** traveling east near Grosse Tete,

Louisiana.

30.     At that time, agents initiated surveillance on **HAWKINS**.  Agents

maintained physical surveillance on **HAWKINS** until he arrived in the area of Zachary,

Louisiana, which is approximately eight miles from **5401 Hawkins Lane**.

31.     On the same date, at approximately 2:54 a.m., agents intercepted Session 315

over **TARGET TELEPHONE 4**.  This conversation was between **HAWKINS** and **Maisha**

**BEAUCHAMP** ("**BEAUCHAMP**").  During the investigation, **BEAUCHAMP** has been

identified as **HAWKINS'** girlfriend and has knowledge of his cocaine trafficking activities. During the conversation, **HAWKINS** told **BEAUCHAMP** he suspected he was being followed by law enforcement. **BEAUCHAMP** asked, "Are they (law enforcement agents) still behind (following) you?" **HAWKINS** stated, "I ain't stopping. Popo (common slang term for law enforcement) get in my way (attempt to stop or block his travel), I'm going to ram them (in an attempt to flee and escape because he was transporting cocaine and did not want to be arrested)."

32.     Based on this conversation, your Affiant believes **HAWKINS** told **BEAUCHAMP** that if the law enforcement officers attempted to stop him he would attempt to flee and escape because he was transporting a quantity of cocaine.

33.     At that time, agents terminated the surveillance on **HAWKINS**. However, anticipating **HAWKINS** was traveling to **5401 Hawkins Lane**, agents were covertly positioned to conduct stationary surveillance to observe **HAWKINS** as he traveled towards **5401 Hawkins Lane**. At approximately 3:03 a.m. agents observed **HAWKINS** traveling east on Highway 955 toward Hawkins Lane.

34.     At approximately 3:06 a.m. agents observed **HAWKINS** continue to travel east on Highway 955 and turn south on Hawkins Lane and travel toward **5401 Hawkins Lane**. Due to the fact that Hawkins Lane is a dead end street, the time of day, and no other traffic being present on Hawkins Lane, in conjunction with the intercepted telephone call indicating **HAWKINS** believed he was being followed by law enforcement, agents terminated physical surveillance on **HAWKINS**, but believe that **HAWKINS** traveled to **5401 Hawkins, Lane**.

35.     Your Affiant reviewed E-911 data provided by AT&T indicating the location of **TARGET TELEPHONE 4**.  An analysis of this data revealed that on July 25, 2017, at approximately 3:24 a.m., **TARGET TELEPHONE 4** was located at **5401 Hawkins Lane**. Based on this analysis and the above information, your Affiant believes **HAWKINS** was at **5401 Hawkins Lane, Ethel, Louisiana**.

36.     Based on the above-described intercepted calls, the physical surveillance conducted by agents and the analysis of the E-911 data, your Affiant believes **HAWKINS** transported a quantity of cocaine from Houston, Texas to **5401 Hawkins Lane, Ethel, Louisiana**, where the cocaine was stored.

37.     Based on training and experience, your Affiant knows that locations where cocaine is transported to and/or stored often contained evidence of cocaine trafficking, including but not limited to: cocaine, cocaine base, packaging materials, cutting materials, rubber gloves, plastic bags, digital scales, firearms, U.S. currency, and tools to convert cocaine to cocaine base.

38.     Based on the above described facts, your Affiant believes evidence of **HAWKINS** cocaine trafficking is contained within the residence **at 5401 Hawkins Lane**, or another structure on the same property.

**B.      5401 Hawkins Lane**

39.     As noted previously, based on physical surveillance, commercial databases, intercepted communications, and E-911 Phase II Geo Location data, your Affiant has identified **5401 Hawkins Lane, Ethel, Louisiana**, as **HAWKINS** base of operations for his cocaine trafficking.

40.    Your Affiant learned through commercial database searches and the East Feliciana Parish Assessor website, **HAWKINS** purchased **5401 Hawkins Lane, Ethel, Louisiana**, on July 26, 2005, and is still the current owner.

41.    On July 3, 2017, DEA monitors intercepted Sessions 776-778 occurring over **TARGET TELEPHONE 3**. These sessions were text messages exchanged between **HAWKINS** and an unknown male. During Session 776, **HAWKINS** texted the unknown male, "Yo yo u ready." In Session 777 the unknown male replied, "Bet. Leavin the. Shop headed up." In Session 778 **HAWKINS** texted, "ok bet I'll b n back (**5401 Hawkins Lane**) I'll ready got u ready."

42.    Based on the above text message conversation, your Affiant believes **HAWKINS** is asking the unknown male if he is ready to meet to purchase narcotics. The unknown male advises **HAWKINS** he is leaving his location and headed to **5401 Hawkins Lane**. Your Affiant further believes **HAWKINS** advises the unknown male he will be at **5401 Hawkins Lane** with the narcotics ready.

43.    Your Affiant reviewed E-911 data provided by AT&T indicating the location of **TARGET TELEPHONE 3**. An analysis of this data revealed that on July 3, 2017, at approximately 2:40 p.m., **TARGET TELEPHONE 3** was located at **5401 Hawkins Lane, Ethel, Louisiana**. Based on this analysis, your Affiant believes **HAWKINS** was at **5401 Hawkins Lane.**

44.    Based on the above-described intercepted calls and the analysis of the E-911 data, your Affiant believes **HAWKINS** stores and packages cocaine for distribution at **5401 Hawkins Lane.**

45.     On July 4 and July 5, 2017, DEA monitors intercepted Sessions 828-832 and 839-841 occurring over **TARGET TELEPHONE 3**. These sessions were text messages exchanged between **HAWKINS** and **Michael JACKSON** ("**JACKSON**"). During Sessions 828 and 829, **JACKSON** texted, "I'll have you that about Friday r Saturday with d other thing r before than my nig I need d 18 (18 ounces of narcotics) early n d morning how early can you get there my nig I got to take my lil baby to d doctor at 8 I'm trying to come get that first before I go." In Session 830, **HAWKINS** responded, "Yo yo. Ok. 6 good. Just call my phone before u lev out make show Iam woke." In Session 831, **JACKSON** replied, "Ok bet my nig." During Session 832, **JACKSON** texted, "Waz good my nig ready to come thu" (ready to come to **5401 Hawkins Lane**). In Session 839, **HAWKINS** texted, "Ok. Bet." In Session 840, **JACKSON** texted **HAWKINS**, "I'm pulling up at d gate (**5401 Hawkins Lane**) my nig my bra law drove me down here." In Session 841, **HAWKINS** replied, "Ok bet bet."

46.     Your Affiant believes that, in this exchange of text messages, **JACKSON** tells **HAWKINS** he wants to purchase 18 ounces of narcotics. **JACKSON** tells **HAWKINS** he is at the gate of **5401 Hawkins Lane** in order to conduct the narcotics transaction.

47.     Your Affiant reviewed E-911 data provided by AT&T indicating the location of **TARGET TELEPHONE 3**. An analysis of this data revealed that on July 5, 2017, at approximately 6:56 a.m., **TARGET TELEPHONE 3** was located at **5401 Hawkins Lane**. Based on this analysis and intercepted communications, your Affiant believes **HAWKINS** was at **5401 Hawkins Lane**.

48.      Based on the above-described intercepted calls, and the analysis of the E-911 data, your Affiant believes **HAWKINS** distributes cocaine at **5401 Hawkins Lane**, where the cocaine was stored.

49.      Your Affiant notes **5401 Hawkins Lane** is the last house on Hawkins Lane. Furthermore, there is a gate that goes across the driveway to **5401 Hawkins Lane**.  During the course of this investigation, agents have intercepted communications with **HAWKINS** and other subjects about the gate to the driveway of **5401 Hawkins Lane**.

50.      On July 10, 2017, agents intercepted Sessions 1290-1292 occurring over **TARGET TELEPHONE 3**.  These sessions were text messages exchanged between **HAWKINS** and **Clovis BANKS** ("**BANKS**").  During Session 1290, **BANKS** texted, "Yo." In Session 1291, **HAWKINS** texted, "Yo yo b ready n 30 40 min. I'll meet u at the house Iam n country (**5401 Hawkins Lane**) now about to get them cds (cocaine base) for u."  In Session 1292, **BANKS** replied, "Ok."

51.      Based on the above text message conversation, your Affiant believes **HAWKINS** is telling **BANKS** he will be ready to conduct a narcotics transaction in about 30 to 40 minutes.  **HAWKINS** further tells **BANKS** he will meet him later and that he was currently at **5401 Hawkins Lane** retrieving an amount of cocaine base for **BANKS**.

52.      On July 10, 2017, agents intercepted Sessions 1233, 1234, 1236-1238, 1242-1245 occurring over **TARGET TELEPHONE 3**.  These Sessions were text messages exchanged between **HAWKINS** and an unknown male.  During Session 1233, the unknown male texted, "I'm ready."  In Session 1234 **HAWKINS** texted the unknown male, "Ok wat end u on."  During Session 1236, the unknown male texted, "My mama house."  In Session

1237, **HAWKINS** texted the unknown male, "Hit u n 30 min about to get them" (retrieve

narcotics from **5401 Hawkins Lane**). In Session 1238, the unknown male texted

**HAWKINS**, "Ok bet." During Session 1242, **HAWKINS** texted, "U could come on" (come

to **5401 Hawkins Lane**). During Session 1243, the unknown male asked **HAWKINS**,

"Trucks? (**HAWKINS'** 18-wheeler on Highway 955) Or back?" (**5401 Hawkins Lane,**

**Ethel, LA**). In Session 1244, **HAWKINS** replied, "Back" (**5401 Hawkins Lane**). In

Session 1245, the unknown male replied, "Bet" (agreeing to meet at **5401 Hawkins Lane**).

53.     Based on the above text message conversation, your Affiant believes the

unknown male is telling **HAWKINS**, he is ready to purchase narcotics. Later in the

conversation, **HAWKINS** tells the unknown male he was ready to meet. The unknown male

asks **HAWKINS** if he wants to meet him at **5401 Hawkins Lane**, or by **HAWKINS'** truck

he has parked on Highway 955. **HAWKINS** tells the unknown male to meet him at **5401**

**Hawkins Lane**.

54.     Your Affiant reviewed E-911 data provided by AT&T indicating the location

of **TARGET TELEPHONE 3**. An analysis of this data revealed that on July 10, 2017, at

approximately 3:23 p.m., **TARGET TELEPHONE 3** was located at **5401 Hawkins Lane,**

**Ethel, Louisiana**. Based on this analysis, your Affiant believes **HAWKINS** was at **5401**

**Hawkins Lane, Ethel, Louisiana**.

55.     Based on the above-described intercepted calls and the analysis of the E-911

data, your Affiant believes **HAWKINS** stores and packages cocaine for distribution at **5401**

**Hawkins Lane, Ethel, Louisiana**.

56.    On July 12, 2017, at approximately 7:36 p.m., agents intercepted Session 1444, an outgoing telephone call over **TARGET TELEPHONE 3** to **MATTHEWS**.  During the telephone call, the following conversation occurred:

>    **MATTHEWS:** "What up buddy?"

>    **HAWKINS:** "Whoa now."

>    **MATTHEWS:** "What's happening?"

>    **HAWKINS:** "Ain't nothing to it....hey look, I tried calling about 30 mins ago but your phone wouldn't work."

>    **MATTHEWS:** "I had it in the room I had no service....that why I brought it back in the front."

>    **HAWKINS:** "Oh ok shiiiiit look...ummmmm...as soon as it get dark, bruh, come down here and look it that gray big truck...I'm gonna put them right there on the floor as soon as you open the door...it's uhh 8 of them" (8 pounds of marijuana).

>    **MATTHEWS:** "It's 8 of them?" (8 pounds of marijuana).

>    **HAWKINS:** "Yeaaahhh...it's 8 of them." (8 pounds of marijuana).

>    **MATTHEWS:** "Alright we seriously...I'm gonna hit u and let u know when I leave out now."

>    **HAWKINS:** "Yeaaa Im about to put them up there now but I'm just saying don't   come get them until it get dark"

>    **MATTHEWS:** "Alright"

>    **HAWKINS:** "I'm about to get ready to huuuhh....I'm about to go up there and put them up there now." (About to leave **5401 Hawkins Lane**.)

>    **MATTHEWS:** "Alright."

>    **HAWKINS:** "We can do them at like 550 a piece." ($550 per pound of marijuana).

**MATTHEWS:** "Alright that'll work."

**HAWKINS:** "Alright."

**MATTHEWS:** "Alright buddy."

**HAWKINS:** "Alright."

57.    Based on the above conversation, your Affiant believes HAWKINS tells

**MATTHEWS** as soon as it gets dark to come to Highway 955 where HAWKINS' gray 18-

wheeler is located (location near Hawkins Lane in front of 4149 Hwy 955, Ethel, Louisiana).

Your Affiant further believes **HAWKINS** tells **MATTHEWS** he is going to leave **5401**

**Hawkins Lane** with eight (8) pounds of marijuana and place them on the floorboard of the

truck. **HAWKINS** further tells **MATTHEWS** he is going to sell him each pound of

marijuana for $550 each.

58.    While conducting surveillance during this investigation, agents identified a

2006 gray Peterbilt 18-wheeler, bearing Louisiana license P246280, with the words "J. Hawk

Trucking" on the door, located on Highway 955, Ethel, Louisiana, close to Hawkins Lane.

59.    A records check revealed the Peterbilt was registered to J. Hawk Trucking at

4149 West Highway Apt. #955, Ethel, Louisiana. Your Affiant believes the correct address

should be 4149 Highway 955 West, Ethel, Louisiana.

60.    On July 30, 2017, at approximately 7:33 p.m., agents intercepted Session 1272

over **TARGET TELEPHONE 4** between **HAWKINS** and **Jaquanna FERGUSON**

("**FERGUSON**"). During the telephone call, the following conversation occurred:

> **HAWKINS:** "Then that will give me something to do every day, I'ma get up
> and drop the baby off and go on, and go work on the house versus me sitting
> around, you know I don't be liking sitting around, you know that's why I be in
> Ethel most of the time throughout the day, you know, cause I live around all

them other color (white) mother fuckers, you know what I'm sayin'? I ain't trying to have them just see me like sittin' around, know what I'm sayin'? I don't be tryin' to let them, you know. Put it like this, by the time I come home everybody on my street done gone to work. So they not around in the daytime so when everybody get off, I ain't tryin to be there. That why whenever you talk to me I be in Ethel anyway. I gotta get up and go somewhere, I ain't gonna be able to sit up in that bitch like all day every day. If I do, one day to me it will be like my day off, that's how I think about it. Cause you know the two mother fuckers on the side of me and the mother fucker in the front of me already done asked me what I do."

**HAWKINS**: "Them white people so fucking stupid, I'm like bitch I didn't ask y'all what y'all do, so y'all just nosy as fuck. I told the mother fucker across the street what I did, they ask me if I can fix a driveway or some shit, they got a rent house somewhere they want me if I could do them a driveway."

**FERGUSON**: "Lord."

**HAWKINS**: "My dumb ass acting like I could do it."

61.    Based on the above conversation, your Affiant believes **HAWKINS** told **FERGUSON** that he does not like to remain at his residence all day because **HAWKINS** does not want the neighbors to see him there without appearing to go to work.

62.    **HAWKINS** further states that some of his neighbors have asked him what he does for a living and have even offered him jobs, such as paving a driveway, to which **HAWKINS** states that he acted like he knew how to do the work.

63.    Based on this conversation, in conjunction with the information obtained from the query of commercial databases, your Affiant believes **HAWKINS** is attempting to hide his true source of income, to the extent his neighbors may warn law enforcement that **HAWKINS** does not go to work. Affiant further believes that when **HAWKINS** references

spending his days in Ethel instead of engaging in legitimate employment, **HAWKINS** is referring to the time he spends conducting drug trafficking related activities at **5401 Hawkins Lane, Ethel, Louisiana**.

      C.     **Financial**

64.    Your Affiant has been assisted in this investigation by financial investigators, employed by DEA, as well as a special agent with the Internal Revenue Service (IRS). These investigator,s along with case agents, have been unable to verify any legitimate source of income for **HAWKINS**. Based on the investigation to date, your Affiant believes that **HAWKINS** only source of substantial income is the illegal sale of controlled substances.

65.    Records provided by the Louisiana Workforce Commission reflect no wages, employers, or unemployment compensation associated with **HAWKINS** for the period from 1985, through February 2017. Records provided by the Louisiana Workforce Commission reflect no wages, employers, or unemployment compensation associated with **THOMAS** for the period from 1984, through 2015. These records indicate **THOMAS** earned $28,969 in 2016. Furthermore the records indicate to date in 2017, **THOMAS** has earned $8,831.

66.    Records provided by the Louisiana Workforce Commission revealed J. Hawk Trucking LLC, and Top Choice Transport, LLC, are not registered with the Louisiana Workforce Commission.

67.    Based on this information, in conjunction with the intercepted communications over **TARGET TELEPHONES** beginning on June 23, 2017, your Affiant knows **HAWKINS** has had no legitimate employment. Your Affiant further believes **HAWKINS** only source of income is derived from the sale of illegal narcotics.

68.    This belief has been confirmed during this investigation through intercepted communications and physical surveillance.  Over the course of this investigation, it does not appear that **HAWKINS** has a place of employment to which he reports nor does it appear that **HAWKINS** engages in any legitimate employment.  Furthermore, it does not appear that **HAWKINS** engages in any business dealings, negotiations or transactions with the companies he is associated with.

69.    Instead, through physical surveillance and intercepted communications, agents have observed **HAWKINS** daily routine, which usually involves him caring for his children during the day, and conducting narcotics transactions in the evening and at night during the summer months when the children are not in school.  Once school started, **HAWKINS** would take care of the children in the morning and then have the rest of the day to facilitate his cocaine trafficking, visit females, run errands, make trips to Houston, Texas, or do nothing.

70.    As stated previously, **HAWKINS** and **THOMAS** purchased their residence on April 3, 2017, for $390,000, and are the current owners.

71.    Through physical surveillance, review of commercial databases, and intercepted communications, agents have identified numerous vehicles currently registered to **HAWKINS,** as set forth below:

- 2015 GMC Sierra Denali, purchased on March 27, 2015, at a total cost of $80,159 and **HAWKINS** put $5,150 in cash down on this vehicle

- 2014 GMC Sierra Denali, purchased on October 18, 2014, at a total cost of $60,044, financed amount of $30,793 and **HAWKINS** put $1,080 cash down on this vehicle

- 2017 GMC Yukon Denali, purchased on April 13, 2017, at a total cost of $93,972

- 2010 Ford Mustang

- 2017 GMC Sierra, Acar Leasing Limited also listed

- 2015 GMC Yukon, Vault Trust also listed

- 2009 Honda Accord

- 1987 Oldsmobile Cutlass

- 2000 Peterbilt 18-wheeler

- 2005 Chevrolet pick-up truck

- Three (3) dump trailers for 18-wheelers

72.     Through physical surveillance, review of commercial databases, and intercepted communications, agents have identified numerous vehicles currently registered to **THOMAS**, as set forth below:

- 2017 Polaris, purchased on April 22, 2017, at a total cost of $21,098

- 2016 GMC Yukon Denali, leased on April 23, 2016 at $834/ month for 48 months

- 2015 Ford Mustang

- 2016 Lexus ES 350

73.     Through physical surveillance, review of commercial databases, and intercepted communications, agents have identified vehicles currently registered to J. Hawk Trucking LLC, as set forth below:

- 2006 Peterbilt 18 wheeler

- 2010 Kenworth

- 2009 Peterbilt

- 1994 Kenworth

- 1998 Kenworth

74.      Furthermore, agents have identified four of the above-mentioned vehicles, a 2015 GMC Sierra Denali bearing Louisiana license C269151, a 2017 GMC Sierra Denali bearing Louisiana license C497192, a Lexus, and a 2006 Peterbilt bearing Louisiana license P246280, used by **HAWKINS** in furtherance of his drug-trafficking activities.

According to records, the 2015 GMC Sierra Denali is registered to **HAWKINS** at 4149 W Highway Apt# 955, Ethel, Louisiana, and the Peterbilt is registered to J Hawk Trucking LLC, at the same address.  Your Affiant further believes the correct address should be 4149 Highway 955 West, Ethel, Louisiana.  Furthermore, the 2017 GMC Sierra Denali is registered to **Jeremy DeWayne HAWKINS**, Louisiana Drivers' License Number 7269494, with no address given, and Acar Leasing Limited.

75.      Your Affiant knows through investigation that **HAWKINS** is a registered member of J. Hawk Trucking, LLC, 4149 Highway 955 West, Ethel, Louisiana, and an Officer/ Registered Agent of Top Choice Transport, LLC, **5401 Hawkins Lane, Ethel, Louisiana**.

76.      During the interception period there have been insufficient calls intercepted to indicate the amount of money these businesses are making, if any.   In short, there are no, or insufficient, intercepted conversations which indicate that any or all of **HAWKINS'** businesses are viable.  Consequently, no other significant source of income, other than cocaine trafficking, could be identified to support **HAWKINS'** lifestyle.

77.    Your Affiant believes **HAWKINS** does not derive enough income, if any, from his companies to support his standard of living.  Consequently, **HAWKINS** must rely on cocaine sales, which have been documented, to support his lifestyle.  It is further believed that **HAWKINS** is laundering his drug proceeds through the business entities he established to legitimize his narcotic revenues, which is one method used by narcotic traffickers to launder drug proceeds.

78.    Financial database research conducted on **HAWKINS** identified at least three significant financial transactions:  1) On May 8, 2015, **HAWKINS** and **THOMAS** deposited $10,325 in currency to Pelican State Credit Union into two different accounts.  The documentation reflects the transaction consisted of multiple payments totaling $10,325, as reported on a CTR;  2) On September 29, 2016, **HAWKINS** paid $10,900 in U.S. currency to Fusion Autoplex, as documented on a Form 8300.  It should be noted that Form 8300 is a Report of Cash Payments Over $10,000 Received in a Trade or Business;  3) On December 19, 2016, **HAWKINS** and **THOMAS** deposited $10,300 in currency to Pelican State Credit Union into two different accounts.  The documentation reflects the transaction consisted of multiple payments totaling $10,300, as reported on a CTR.  These transactions further prove that **HAWKINS** has amassed significant currency from his illegal enterprises and has shown no legitimate sources of income to support such a transaction.  Significant currency payments are also the trademark of individuals involved in illicit activities such as drug trafficking.

## CONCLUSION

79.    Based on the facts set forth in this affidavit, as well as my training and experience, your Affiant believes that **HAWKINS** and other members of the **HAWKINS**

**DTO** have committed, are committing, and will continue to commit offenses involving distribution of cocaine, cocaine base, and marijuana and conspiracy to do the same, in violation of Title 21, United States Code, Sections 841(a)(1), and 846; and Title 18, United States Code, Section 1956 et seq, and are in fact narcotics traffickers as described above.

80.    Based on the facts set forth in this affidavit, and other information obtained during this investigation, your Affiant believes that **HAWKINS** only source of substantial income is the illegal sale of controlled substances. Financial investigators have been unable to verify any legitimate source of income for **HAWKINS**. Your Affiant believes **HAWKINS** does not derive enough income, if any, from his companies to support his standard of living. Consequently, **HAWKINS** must rely on cocaine sales, which have been documented, to support his lifestyle.  .

81.    This investigation has revealed that **HAWKINS** uses **5401 Hawkins Lane, Ethel, Louisiana,** to facilitate his narcotics-trafficking activities.  Your Affiant knows, through training and experience, that locations used by cocaine traffickers to store cocaine, distribute cocaine, accept delivery of cocaine, and package cocaine for distribution often times contain tools used for these purposes.  These items include, but are not limited to, cocaine, cocaine base, kilogram wrappings, latex gloves, digital scales, packaging materials, cooking materials, cutting materials, mixing devices, digital scales, rubber gloves and ledgers or logs containing records of past, present or future drug transactions.

82.    Based on the above-detailed intercepted communications, confidential source information and physical surveillance, your Affiant believes that **HAWKINS** utilizes **5401 Hawkins Lane, Ethel, Louisiana,** to store cocaine and cocaine base, package cocaine and

cocaine base for distribution, and distribute cocaine and cocaine base along with other narcotics. Your Affiant believes evidence of narcotics trafficking activities are contained within **5401 Hawkins Lane, Ethel, Louisiana**. Accordingly, your Affiant respectfully requests that a search warrant be issued.

83.    Additionally, pursuant to Title 21, United States Code, Section 879, there exists good cause to permit the execution of the requested warrant at any time in the day or night. During this investigation, you Affiant has learned that the majority of narcotics activity occur at **5401 Hawkins Lane, Ethel, Louisiana**, usually after dark. **HAWKINS** has been intercepted stating he does not like to sell narcotics or have customers around **5401 Hawkins Lane** unless it is dark. During this investigation, **HAWKINS** traveled to Houston, Texas, and returned as late as 3:06 a.m. to **5401 Hawkins Lane**. Moreover, it appears that no one lives at **5401 Hawkins Lane**, and it is used primarily for narcotics trafficking activities by **HAWKINS**. For these reasons, and to ensure that the warrant is executed at a time when contraband is likely to be found at **5401 Hawkins Lane**, your Affiant seeks authorization to execute the requested warrant at any time of the day or night.

84.    It is requested that the warrant and accompanying affidavit and application in support thereof, as they reveal an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against potential flight, and better ensure the safety of agents and others, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office, and may be served on Special Agents and other investigative and law enforcement officers of the DEA,

federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant.

85.    Based on the aforementioned information I request the authority to search the above described address (**5401 Hawkins Lane, Ethel, LA**).

Jason A. Dohm, Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed in my presence this ___11th___ day of September, 2017, at Baton Rouge, Louisiana.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

COPY

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>The premises of 5401 Hawkins Lane, Ethel,<br>Louisiana, 70730, to include any outbuildings<br>associated with the premises if located thereon. | )<br>)<br>)<br>)<br>)<br>)     Case No.   17-MJ-97 |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Middle _____ District of _____ Louisiana _____
*(identify the person or describe the property to be searched and give its location)*:

The premises of 5401 Hawkins Lane, Ethel, Louisiana, 70730, to include any outbuildings associated with the premises if located thereon, further described in ATTACHMENT "A."

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT "B"

**YOU ARE COMMANDED** to execute this warrant on or before   SEPTEMBER 25, 2017   *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   RICHARD L. BOURGEOIS, JR.   .
                                                                                       *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
     ☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   9/11/17 at 3:25pm          _____
                                                                   *Judge's signature*

City and state:     Baton Rouge, LA                           Richard L. Bourgeois, Jr., Magistrate Judge
                                                                            *Printed name and title*

## ATTACHMENT A

### Property to Be Searched

The property to be searched 5401 Hawkins Lane, Ethel, Louisiana, to include any outbuildings, storage sheds, detached garages and vehicles associated with the premises if located thereon within the curtilage.

The property is further described as being a mobile home with an attached porch and a red roof. The area to be searched is the last property on Hawkins Lane, at the dead end. Furthermore, there is a gate with placards across the driveway, which restricts access to the location.  Photographs of the property are included below.





# ATTACHMENT B

## Particular Things to be Seized

Items to be searched for and seized include any fruits, contraband, evidence, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, including the following:

1.   Cocaine and other controlled substances;

2.   Pots, pans, blenders, presses, or other dishes, items, containers, materials, or equipment used in the conversion of cocaine to cocaine base or to process other controlled substances for redistribution, and which may contain residue from cocaine and other controlled substances.

3.   Drug paraphernalia, including scales, plastic baggies, plastic wrappers, and other equipment and materials used to receive, measure, weigh, package, and distribute cocaine and other controlled substances ;

4.   Baking soda, Isotol, and other chemicals used to process cocaine and other controlled substances for redistribution;

5.   Sums of cash or currency;

6.   Ledgers, logs, and notes containing records of past, present, or future drug transactions or containing information about other drug dealers or transactions;

7.   Any cellular telephones or devises;

8.   Any firearms and/or ammunition; and

9.   Documents related to residency and/or ownership of the property being searched.